FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ AUG 08 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
COOPER WIRING DEVICES, INC.,

        Plaintiff,

- against -

LENNY M. NOVIKOV,

        Defendant.
----------------------------------------X

MEMORANDUM & ORDER
05-CV-2824 (NGG)

GARAUFIS, United States District Judge.

Plaintiff Cooper Wiring, Inc. ("Plaintiff" or "Cooper Wiring") brings this suit to recover damages for the alleged breach of an Employee Confidentiality Agreement. Defendant Lenny Novikov ("Defendant" or "Novikov") moves to dismiss the claim brought by Cooper Wiring pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that this court lacks subject matter jurisdiction over the action. Because this case does not involve a federal question, this court has subject matter jurisdiction if the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The diversity of the parties is not at issue. However, Defendant argues that Plaintiff has failed to state a claim in excess of $75,000, and, therefore, does not meet the statutory minimum for this court to exercise jurisdiction under 28 U.S.C. § 1332(a). For the reasons set forth below, Defendant's motion is denied.

I. Background

Because Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Sweet v. Sheahan, 235 F.3d 80, 84 (2d. Cir. 2000).

Cooper Wiring is a corporation organized under the laws of the State of New York, and is

1

a subsidiary of Cooper Industries, a manufacturing company based in Houston, Texas. (Compl. ¶ 1.) Cooper Wiring is the successor entity of Eagle Electric Manufacturing Co., Inc.[1] Until about December 2004, Cooper Wiring's principal place of business was in Long Island City, New York. (Id.)

Novikov is a citizen and domiciliary of the State of New Jersey. (Id. ¶ 2.) From approximately June 2000 to February 2004 Novikov was employed as a project engineer manager in the electronic engineering department of Cooper Wiring at its office in Long Island City. (Id. ¶ 8.) At the time he commenced employment with Cooper Wiring, Novikov agreed to and executed an Employee Patent and Confidential Information Agreement ("Confidentiality Agreement"), dated June 26, 2000. (Id. ¶ 9.) The Confidentiality Agreement states that all inventions, patents, and work products developed by Novikov while he was employed by Cooper Wiring are Cooper Wiring's property, and that Novikov will not disclose any information of a "confidential or proprietary nature" during or after his employment, without Cooper Wiring's consent. (Confidentiality Agreement ¶¶ 1-4.) The paragraph most pertinent to this motion states:

> Ideas, Inventions and Confidential Information, relating to my activities while working for [Cooper Wiring] and conceived or made by me, alone or with others, within one year after termination of my employment may have been conceived in significant part while employed with [Cooper Wiring]. Accordingly, I agree that such ideas, Inventions and Confidential Information, shall be presumed to have been conceived during my employment with [Cooper Wiring] and are to be assigned to [Cooper Wiring] under the terms of this Agreement unless and until I have clearly established the contrary by appropriate documentation and support.

(Confidentiality Agreement ¶ 8.) Furthermore, Novikov agreed that injunctive relief may be

---

[1] The Court will refer to Cooper Wiring and its predecessor as "Cooper Wiring."

2

granted if the Confidentiality Agreement is violated, and that the entire Agreement "shall be construed and enforced in accordance with the laws of the State of New York." (Confidentiality Agreement ¶¶ 9, 13.)

Plaintiff claims that Novikov, while employed at Cooper Wiring, had access to "confidential trade secrets and product development plans." Plaintiff asserts that when Novikov became an employee of Intellicon several months after resigning from Cooper Wiring, he used this information to his benefit and to the detriment of Cooper Wiring. (Compl. ¶¶ 15, 23, 24, 25, 26.) According to the Complaint, "defendant has created device(s) and used ideas relat[ed] to developing electrical switch products that can be operated remotely with devices utilizing radio frequency technology – the same project that he was working on while he was employed by Cooper Wiring." (Compl. ¶ 24.)

Plaintiff seeks damages and injunctive relief from Novikov for (1) breaching his "fiduciary duties of good faith and loyalty owed to Cooper Wiring," and (2) breaching the Confidentiality Agreement he signed when hired by Cooper Wiring. (Compl. ¶¶ 29-43.) Plaintiff seeks damages for (1) Novikov's misappropriation of trade secrets and (2) the unfair competition that resulted from these alleged indiscretions. Plaintiff claims damages in excess of $75,000, the statutory minimum necessary for this court to exercise diversity jurisdiction. (Compl. ¶ 3.) Novikov brings the current Motion to Dismiss because Plaintiff failed to specify in the Complaint how the statutory minimum would be met even if his claims were to succeed.

## II. Standard of Review

While the plaintiff in a diversity suit "has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount,"

3

Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir.1994), this burden is hardly onerous because there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999). To overcome the good faith presumption, the party opposing jurisdiction must show "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold. Wolde-Meskel, 166 F.3d at 63 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938)); accord Jin v. EBI, Inc., No. 05-cv-4201 (NGG), 2006 U.S. Dist. LEXIS 75390, at *9-10 (E.D.N.Y. Oct. 17, 2006) (Garaufis, J.). The Second Circuit recognizes the difficulty in distinguishing amongst these two tests and has stated that the "good faith test [is] but a linguistic variant of the legal certainty standard." Ochoa v. Interbrew America, Inc., 999 F.2d 626, 629 (2d Cir. 1993) (internal quotation marks omitted).

By applying this standard, the Second Circuit's "cases have set a high bar for overcoming th[e] [good faith] presumption." Scherer v. The Equitable Life Assurance Society of the United States, 347 F.3d 394, 397 (2d Cir. 2003); see also Ochoa, 999 F.2d at 628 ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that [] the sum claimed by the plaintiff controls if the claim is apparently made in good faith."); Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir.1982) ("[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted."); Tongkook, 14 F.3d at 785 ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.").

In assessing whether the complaint satisfies the amount-in-controversy requirement, the

Court may look to evidence outside the complaint. See Zacharia, 684 F.2d at 202 (The Second Circuit "ha[s] allowed [ ] resort to materials developed in discovery to be used to amplify the meaning of the complaint allegations."); Deutsch v. Hewes St. Realty Corp., 359 F.2d 96, 100 (2d Cir. 1966) (dismissal is appropriate where there is "independent evidence . . . tending to prove that the claim had been inflated solely to exceed the jurisdictional amount").

### III. Discussion

Defendant argues that "the conclusory assertion that a plaintiff's damages exceed $75,000, without more, does not satisfy the requirement of a bona fide factual allegation of the amount in controversy." (Memorandum of Law in Support of Defendant's Motion to Dismiss at 4.) As discussed above, "the Supreme Court has held that the party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdictional amount in controversy." Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 273 (2d Cir.1994) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

In Plaintiff's Memorandum in Opposition to the Motion to Dismiss, Cooper Wiring discloses that the damages it seeks consist of over one million dollars in product development that it believes has been compromised by Defendant's actions. Plaintiff also seeks to recover approximately the $120,000 salary it paid to Defendant during the year that he researched the remote radio frequency product that is the impetus for this action. Furthermore, Jim Knapik, a Vice President at Cooper Wiring, submitted an Affidavit describing the expected $1 million investment in and millions of dollars of revenues from such products. (Knapik Aff. ¶¶ 7-8.) In all, Plaintiff claims over one million dollars in damages. (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at 2; Knapik Aff. ¶¶ 7-8.) In light of the presumption that the

Complaint's allegations are made in good faith, Wolde-Meskel, 166 F.3d at 63, I find that Cooper Wiring has satisfied the Second Circuit's requirement that there be a "reasonable probability" that the plaintiff claims in excess of $75,000. See Tongkook, 14 F.3d at 784.

Defendant argues dismissal is warranted because the Complaint provides only a conclusory allegation that the amount in controversy requirement has been met. In support of this proposition, Defendant cites several district court cases in this Circuit in which courts found that the plaintiff had failed to plead the amount in controversy. (Memorandum in Support of Motion to Dismiss at 4, 5.) The cases cited by Defendant, though, are inapposite because, in those cases, the plaintiff made a mere conclusory assertion that the amount in controversy exceeded the statutory requirement without providing any factual basis that would permit an inference as to the value of the plaintiff's claims. Johnson-Kamara v. W. Chacon Trucking, No. 05-cv-9900 (JFK), 2006 WL 336041, at *3 (S.D.N.Y. Feb. 9, 2006) (parties asserting jurisdiction "faile[ed] to justify [the amount in controversy] statement with any factual support" despite their obligation "to give the court something in the way of a factual explanation to support" jurisdiction); Dakari v. Dawson, No. 05-cv-1494 (NAM), 2006 WL 88659, at *2 (N.D.N.Y. Jan. 11, 2006) ("[T]he unsigned complaint is devoid of any facts which would establish that the amount in controversy exceeds the sum or value of $75,000."); Rothstein v. NARAL, Inc., No. 81-cv-6072 (RLC), 1981 U.S. Dist. LEXIS 16113, at *7-8 (S.D.N.Y. Nov. 25, 1981) ("[A] mere conclusory allegation of jurisdictional amount" is insufficient and, if the suit were to continue, "plaintiff would be required to articulate the basis for the claim that the matter in controversy exceeds" the statutory requirement). In contrast to these cases, not only are there facts present in Cooper Wiring's Complaint that support a "reasonable probability" that the amount in

controversy is met[2], but subsequent documents submitted by Cooper Wiring are clear in stating the damages it seeks to recover.

In order to prevail on his motion to dismiss, Defendant must show to a "legal certainty" that the amount in controversy does not exceed $75,000. Defendant presents no evidence to satisfy this burden. Defendant argues that Cooper Wiring cannot recover research and marketing investment expenses as damages because these expenses were incurred at a time when Novikov was not working at Cooper Wiring. (Defendant's Reply Memorandum at 9.) However, even if true, nothing about this temporal fact precludes Cooper Wiring from recovering research and marketing expenses because Novikov's breach of the Confidentiality Agreement could still be the factual and proximate cause of Cooper Wiring's loss of these expenses. Similarly, Defendant's argument that the Knapik Affidavit concedes that Defendant's conduct will have no impact on Cooper Wiring's bottom line fails. (Id.) In support of this argument, Defendant points to the Knapik Affidavit, which states that Cooper Wiring will generate millions of dollars in revenue from wirelessly controlled products despite Defendant's conduct. (Knapik Aff. ¶ 8) Even if Knapik's assertion is true, there remain legal and factual questions as to whether Defendant's conduct has caused Plaintiff to lose profits it would have generated but for Defendant's conduct.

The court need not reach Defendant's argument that Cooper Wiring is not entitled to

---

[2] While a clear explanation of the damages was not set forth in the Compliant, it is clear from the language of the Complaint what the nature of the damages would be. For example, in Paragraph 6 of the Complaint, Plaintiff states that "Novikov[] impermissibly utiliz[ed] trade secrets and confidential and proprietary information belonging to Cooper Wiring regarding its development of radio frequency remote control devices and technologies for other products, causing damages to Cooper Wiring in excess of $75,000." (Compl. ¶ 6.)

recover (1) "faithless employee" damages or (2) its overhead. Even if Defendant could show to a legal certainty that Cooper Wiring was not entitled to these damages, the amount in controversy would still exceed $75,000.

## IV. Conclusion

For the reasons set forth in this Memorandum and Order, the Defendant's Motion to Dismiss is DENIED.

SO ORDERED.
Date: August 6, 2007
      Brooklyn, New York

/signed/
_____
NICHOLAS G. GARAUFIS
United States District Judge